UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BILLY BEDFORD,

    Plaintiff,

vs.                                              Case No.  3:04-cv-1207-J-12MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

    Defendant.
_____/

### REPORT AND RECOMMENDATION[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs and the applicable law.  For the reasons set forth herein, it is recommended the Commissioner's decision be **AFFIRMED**.

**I.**    **PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on August 28, 2000, alleging an inability to work since May 30, 2000.  (Tr. 114-16, 122).  The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 71-73, 75-77).  Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on January 28, 2003.  (Tr. 23-68).  On February 27, 2003, the

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

1

ALJ issued a decision finding Plaintiff was not disabled. (Tr. 14-22). On April 3, 2003, Plaintiff filed a Request for Review by the Appeals Council. (Tr. 9-10). The Appeals Council denied Plaintiff's request for review, thus making the ALJ's February 27, 2003 decision the final decision of the Commissioner. (Tr. 4-6). Plaintiff timely filed his Complaint in the U.S. District Court on November 17, 2004. (Doc. 1).

II.     NATURE OF DISABILITY CLAIM

   A.     **Basis of Claimed Disability**

Plaintiff claims to be disabled since May 30, 2000, due to a back injury and nerve damage. (Tr. 122).

   B.     **Summary of Evidence Before the ALJ**

Plaintiff was 49 years of age on the date of the hearing. (Tr. 26). He has a high school education, but claims a difficulty with spelling and reading comprehension. (Tr. 26-27). Plaintiff has past relevant work experience as a solid waste attendant, a floor attendant at a supermarket, a truck driver and a materials handler. (Tr. 134). Plaintiff's medical history is highlighted in the ALJ's decision and therefore, will not be repeated in full here. However, by way of summary, the record indicates Plaintiff suffered an injury to his back on November 19, 1984 lifting a tub of battery cells while working for General Electric. (Tr. 213). As a result of that injury, Plaintiff underwent two surgeries. One, on February 26, 1985, for a laminotomy diskectomy L4-L5 on the left. (Tr. 214). A second surgery, another L4-L5 laminotomy diskectomy on the left and L4-L5 fusion with segmental fixation with Lukey plates and pedicle screws, was performed on January 7, 1991. (Tr. 214). After these surgeries, Plaintiff continued to work. He continued

working for General Electric until 1986. (Tr. 134). He then worked as a truck driver in 1987, a floor cleaner for a supermarket in 1992 and from 1995 until 2000, Plaintiff worked as a solid waste attendant for a collection center. Id.

Plaintiff began treatment with Dr. Oscar De Paz, M.D. in January 1992, when Dr. De Paz conducted an independent medical examination regarding Plaintiff's claims of back pain. (Tr. 213-18). Thereafter, Plaintiff continued to see Dr. De Paz on a regular basis for his back pain. On March 6, 1992, Dr. De Paz opined that Plaintiff could "work on a light duty status without repetitive bending, twisting, stooping, or squatting with the ability to make frequent position changes." (Tr. 212). Dr. De Paz hoped that after a functional capacity evaluation, Plaintiff's work status could be increased. Id. Unfortunately, after the functional capacity evaluation and a work hardening program, Plaintiff remained capable of working only at a "light work status with a maximum lift of 25 pounds and a two handed carry of 18 pounds." (Tr. 208). Dr. De Paz also found Plaintiff "should avoid repetitive bending, twisting, stooping or squatting" and "should be able to make frequent position changes." Id.

On January 31, 1995, x-rays of Plaintiff's lumbar spine were performed. They revealed "mild degenerative facet changes at L3-4" but no other "significant abnormality." (Tr. 203). On March 31, 1997, additional x-rays of Plaintiff's lumbar spine were ordered. They revealed "no abnormal subluxation or bony abnormality" and noted "no significant change from the previous examination." (Tr. 199). On February 8, 2000, Plaintiff underwent an MRI of his lumbar spine. The report indicated: "[s]ignificant obscuration of the spinal canal at the L4-5 level due to posterior fixation hardware" and "[d]egenerative disc changes above and below the fusion but no obvious evidence for

spinal stenosis or focal nerve compression." (Tr. 186-87).

On April 18, 2000, in a letter to Plaintiff's employer, Dr. De Paz opined that Plaintiff could walk only 50% of the time and should "avoid repetitive bending, stooping or lifting." (Tr. 183). With these restrictions, Dr. De Paz believed Plaintiff could perform the duties of his position as a solid waste attendant. Id. On July 17, 2000, Plaintiff underwent an epidural steroid injection, which he reported reduced his pain to a 2 on a scale of 10. (Tr. 161). However, Plaintiff reported to Dr. De Paz that the procedure only provided him with pain relief for several days. (Tr. 181). Dr. De Paz completed an Residual Functional Capacity ("RFC") form for Plaintiff on October 2, 2000 and stated that Plaintiff had a 30 degree forward flexion limitation and was limited in his ability to bend, twist and stoop. (Tr. 169). Additionally, the form noted that Plaintiff had restricted range of motion in his back, had good dexterity and reduced pinch strength. Id. On November 13, 2000, Plaintiff saw Dr. De Paz for a follow up visit and reported that he was experiencing some mild improvement with his pain. (Tr. 178). Additionally, on September 28, 2001, Plaintiff reported feeling better after experiencing an exacerbation of his pain on September 10, 2001. (Tr. 240-42).

Two non-examining physicians completed Physical RFC Assessments on Plaintiff on October 12, 2000 and March 14, 2001. (Tr. 170-77, 225-32). The first assessment was completed by Tom C. Peele, M.D. Dr. Peele determined that Plaintiff was occasionally able to lift up to 10 pounds, frequently able to lift and/or carry less than 10 pounds; was able to stand and/or walk (with normal breaks) for a total of 2-4 hours in an 8-hour workday; sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on his ability to push or pull with his upper extremities. (Tr. 171).

4

Dr. Peele also determined that Plaintiff could occasionally climb (except for ladders, ropes or scaffolding), balance, stoop, kneel, crouch and crawl. (Tr. 172). Finally, Plaintiff was to avoid concentrated exposure to hazards such as machinery or heights. (Tr. 174).

The second assessment was completed by Robert Whittier, M.D. and was virtually identical to the first RFC assessment except that it noted Plaintiff could stand and/or walk (with normal breaks) for a total of only 2 hours in an 8-hour workday (Tr. 226) and found Plaintiff was subjected to no environmental limitations. (Tr. 227-29).

During the hearing, Plaintiff testified he experiences pain in his lower back and in his left leg and hip. (Tr. 34). He claimed that most of the time, his pain is a 7 on a scale of 10 but that after he takes his medication, he feels "pretty good." (Tr. 36, 50). Plaintiff further testified that he drives approximately, 30 to 40 minutes per week to pick up his mother's medications. (Tr. 29). Additionally, Plaintiff walks 40 to 50 yards to see his mother on a daily basis. (Tr. 38). Plaintiff also washes the dishes, vacuums and makes the bed. (Tr. 39). Plaintiff claims he works for about ten minutes and then takes a ten minute break. (Tr. 40). Plaintiff also testified that he goes to church about once a month, visits friends once or twice a week and fishes on his boat about once or twice a year. (Tr. 41-43). Plaintiff claims he can sit for 10 to 15 minutes and then needs to get up and walk for about 10 to 15 minutes. (Tr. 47). Plaintiff testified he can stand for 5 to 10 minutes. (Tr. 47). Plaintiff cannot bend or squat but can kneel and reach. (Tr. 49-50). Plaintiff further testified that he cannot grip but that it has not caused him any problems around the house. (Tr. 50).

C.    **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Social Security Act and was insured for benefits up through the date of the decision.  (Tr. 15, 20).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (Tr. 15, 20).  At steps two and

three, the ALJ found Plaintiff had:

> degenerative disk changes and history of back surgeries, impairments that are severe within the meaning of the Regulations but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P of the Regulations No. 4. Specifically, Listing 1.05C is not met because the evidence does not establish a vertebrogenic disorder of the required severity.

(Tr. 17). The ALJ further determined Plaintiff retained the residual functional capacity to:

> perform work at the sedentary exertional level. Specifically, his reading and math abilities are limited to the 4th grade level and if he writes, he would make frequent spelling mistakes. The claimant is capable of sitting 6 hours. He can stand and walk 30 minutes at a time up to 3 hours a day, no working around hazardous machinery, foot controls and no unprotected heights. Further, the claimant is restricted to bending forward 1/3 of normal bend, stooping and twisting limited to occasional. He requires the freedom to stand up and stretch at least one per 1/2 hour for one or two minutes.

(Tr. 19). In making this determination, the ALJ found Plaintiff's testimony regarding his pain and resulting limitations not fully credible. (Tr. 21).

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine if Plaintiff could perform any of his past relevant work. (Tr. 58-60). The VE explained that Plaintiff could not perform any of his past relevant work because it exceeded his current RFC for sedentary unskilled work. (Tr. 19, 59-60).

At step five, the ALJ determined that based on Plaintiff's age, educational background, work experience, and residual functional capacity, Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy." (Tr. 20). In making this determination, the ALJ utilized the testimony of the

VE and also used the Medical Vocational Guidelines (the grids), 20 C.F.R. pt. 404, subpart P, App. 2. (Tr. 20). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 20, 21).

## III.     STANDARDS OF LAW

### A.     The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

**IV. ANALYSIS**

Plaintiff argues two issues on appeal. First, Plaintiff argues the ALJ erred in failing to provide sufficient reasons why he rejected the opinion of Plaintiff's treating physician, Dr. De Paz, regarding Plaintiff's level of pain and its effect on Plaintiff's ability to work. (Doc. 14, p.10). Additionally, Plaintiff argues the ALJ committed error by failing to properly evaluate Plaintiff's subjective complaints regarding his back, leg and hip problems. (Doc. 14, pp. 12-20).

The Commissioner responds that the ALJ properly considered both Plaintiff's treating physician's opinion and Plaintiff's subjective complaints.

**Whether the ALJ erred by failing to provide sufficient reasons
for rejecting the opinion of Plaintiff's treating physician.**

Plaintiff argues the ALJ failed to provide sufficient reasons for his decision to reject Dr. De Paz's opinions regarding Plaintiff's level of pain and its effect on Plaintiff's ability to work. (Doc. 14, p.10). Plaintiff is correct that the opinion of a treating physician, such as Dr. De Paz, "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's's own medical records." Phillips, 357 F.3d at 1241. In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he/she must clearly

9

articulate the reasons for so doing. Id.

In this case, the ALJ specifically noted that he was placing "significant weight . . . on the opinion of the claimant's long-term treating physician, Dr. De Paz." (Tr. 18). The Court finds Plaintiff's argument that the ALJ failed to properly consider the opinion of Dr. De Paz, a treating physician, without merit. The ALJ extensively cited to Dr. De Paz's opinions regarding Plaintiff's impairment throughout the decision. Plaintiff seems to be arguing that because the ALJ did not specifically acknowledge the pain medications Dr. De Paz prescribed for Plaintiff, he disregarded significant portions of Dr. De Paz's opinion, thereby committing reversible error. The Court does not agree. What medications a physician prescribes to a patient does not constitute a medical opinion. SSR 96-2p defines medical opinions as "opinions about the nature and severity of an individual's impairment(s) and are the only opinions that may be entitled to controlling weight." Here, the ALJ properly considered Dr. De Paz's medical opinions regarding the nature and severity of Plaintiff's impairments. Indeed, the RFC assigned to Plaintiff by the ALJ is entirely consistent with Dr. De Paz's opinion regarding Plaintiff's work restrictions. Accordingly, the undersigned finds no error in the ALJ's treatment of Dr. De Paz's opinion.

### **Whether the ALJ erred by failing to properly evaluate Plaintiff's subjective complaints regarding his back, leg and hip problems.**

Plaintiff also takes the position that the ALJ improperly discounted Plaintiff's subjective complaints of pain. Pain is a non-exertional impairment. Foote, 67 F.3d at 1559. The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be

accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). Once a claimant establishes through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce pain, 20 C.F.R. sections 404.1529 and 416.929 provide that the Commissioner must consider evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms in deciding the issue of disability. Foote, 67 F.3d at 1561. Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ referenced the Eleventh Circuit pain standard and it appears he conducted the correct analysis for pain and subjective complaints. Specifically, the ALJ found that Plaintiff had "impairments that can reasonably be expected to produce the type of symptoms he alleges." (Tr. 18). As such, the ALJ was required to consider Plaintiff's subjective complaints of pain and other symptoms. The ALJ did so and determined the medical evidence confirmed that Plaintiff's "complaints suggest a

greater severity of impairment than can be shown by the objective medical evidence alone." (Tr. 18).

When an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling 96-7p. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

Here, the ALJ provided several reasons for his determination regarding Plaintiff's credibility. The ALJ noted that Plaintiff's "testimony and activities of daily living are not consistent with a finding of disability." (Tr. 18). Specifically, the ALJ referenced Plaintiff's testimony that he visits his mother (who lives 40 to 50 yards away) on a daily basis, washes dishes, does the laundry, mop[s], vacuum[s], makes the bed and cooks

three full meals a week.  Id.  Additionally, the ALJ noted that after Plaintiff's injury in 1984 and the two surgeries, Plaintiff was able to "return to substantial gainful work activity."  Id.  The ALJ also referenced Plaintiff's treating physician, Dr. De Paz's opinion that even with the work restrictions of lifting no more than 10 pounds, walking 50% of the time, and avoiding repetitive bending, stooping or lifting, Plaintiff would still be able to perform his duties at work.  Id.  In addition, the ALJ referenced medical evidence in the record, such as the MRI of Plaintiff's lumbar spine dated February 8, 2000, which revealed no evidence of focal compression.  (Tr. 18, 186-87).

      Plaintiff's primary argument is that based on the medical records from Dr. De Paz reflecting the pain medications prescribed to Plaintiff, the ALJ should have found Plaintiff's testimony regarding his pain credible.  While the ALJ's opinion does not mention all of the medications Plaintiff was prescribed by Dr. De Paz in detail, the ALJ did note that Plaintiff testified he took medication daily for relief of his pain and that the medication caused "some drowsiness."  Id.  In any event, as noted above, medication taken for pain is only one of the factors set forth in the regulations that the ALJ should consider in making his credibility determination.  In the Eleventh Circuit, there is no requirement that all seven of the factors be discussed in detail by the ALJ.  French v. Massanari, 152 F.Supp.2d 1329, 1338, n.6 (M.D. Fla. 2001) (holding that "it is not reversible error that the administrative law judge did not expressly mention the side effects of [the plaintiff's] medications in his credibility determination"); Bechtold v. Massanari, 152 F.Supp.2d 1340, 1349, n.9 (M.D. Fla. 2001), aff'd, 31 Fed.Appx. 202 (11th Cir. 2001).  The undersigned finds that the ALJ properly considered Plaintiff's subjective complaints, but rejected them as not credible to the degree alleged and

articulated explicit reasons for his decision to discount them.  Accordingly, the Court believes the ALJ appropriately performed his task of assessing witness credibility and therefore, declines to disturb the determination of the ALJ that Plaintiff's subjective complaints of pain were not wholly credible.

**V.    CONCLUSION**

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards.   Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.


**DONE AND ENTERED** at Jacksonville, Florida, this  30th  day of November, 2005.


*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Honorable Howell W. Melton,
    Senior District Judge